Edward J. Blum, State Bar No. 185163
LAW OFFICE OF EDWARD J. BLUM
3700 Wilshire Blvd., Suite 950
Los Angeles, California 90010
Phone:  (213) 479-5322; Fax:  (323) 383-9910
Email:  edblum@duidefenseLA.com

Attorney for Sylvia Ferrara

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| SYLVIA FERRARA, an individual,<br><br>       Plaintiff,<br><br>vs.<br><br>CHAD WOLF, Acting Secretary, United States Department of Homeland Security, a government entity,<br><br>       Defendant. | Case No.:<br><br>**COMPLAINT FOR DAMAGES, DECLARATORY, AND INJUNCTIVE RELIEF; DEMAND FOR JURY TRIAL** |

## <u>COMPLAINT</u>

COMES NOW Plaintiff, SYLVIA FERRARA, (hereinafter "Plaintiff"), by and through her undersigned counsel, hereby sues Defendant CHAD WOLF, Acting Secretary of the United States Department of Homeland Security (hereinafter referred to as "Defendant"), and states as follows:

## NATURE OF THE ACTION

Plaintiff brings this lawsuit to remedy acts of employment discrimination perpetrated against her by Defendant in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., as amended by the Civil Rights Act of 1991, including discrimination based on race, age, and reprisal.  Defendant's actions are also in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.,* as amended.  Plaintiff's allegations are discussed in greater particularity in paragraphs 19 through 63 below.

## JURISDICTION

1.      This Honorable Court has jurisdiction over the subject matter of this employment discrimination action as Defendant is the head of a branch of the Federal Government, and as such, this court has jurisdiction under 28 U.S.C. § 1346.

2.      Jurisdiction over this matter is also properly invoked under 28 U.S.C. § 1331, which conveys federal question jurisdiction and specifically under 28 U.S.C. §§ 1343(3), 1343(4).

3.      This Honorable Court also has jurisdiction over the subject matter of this civil action pursuant to 28 U.S.C. § 1337.

4.      This action is also authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. §§ 2000e-5(f)(3) and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, which grants jurisdiction over civil actions which seek monetary damages, equitable, and declaratory relief for violations of civil rights.

**VENUE**

5.      This action properly lies in the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1391, in that the conduct complained of occurred within the Central District of California, and that the Defendant, as the Secretary for the DEPARTMENT OF HOMELAND SECURITY ("DHS"), is the designated official responsible for the conduct of the personnel for the TRANSPORTATION SECURITY ADMINISTRATION ("TSA") at Los Angeles International Airport ("LAX"), located in the City of Los Angeles, County of Los Angeles, State of California.

6.      Venue is also proper in the Central District of California under 42 U.S.C. § 2000e-5(f)(3); as (a) Plaintiff was employed by DHS and the TSA in the Central District of California at the time of his removal from federal service, (b) Plaintiff's employment records are maintained by the DHS & TSA in the Central District of California, (c) decisions adverse to Plaintiff's employment that are the subject of this civil action were made in the Central District of California, and (d) because a substantial part of the events or omissions giving rise to this lawsuit occurred in the Central District of California.

**PARTIES**

7.      At all relevant times herein, Plaintiff was a natural person *sui juris* residing within the County of Los Angeles, State of California, and at all relevant times herein, Plaintiff was employed by the DHS and TSA in the City of Los Angeles, County of Los Angeles, State of California.

8.      At all relevant times herein, Plaintiff was a "person" covered by Title VII as defined in 42 U.S.C. § 2000e(a) and covered by the ADEA as defined in 29 U.S.C. § 630(a).  At all relevant times herein, Plaintiff was an "employee" covered by Title VII as defined in 42 U.S.C. § 2000e(f) and covered by the ADEA as defined in 29 U.S.C. § 630(f).

9.      The DHS was established by the Homeland Security Act of 2002, is the third largest Cabinet department of the United States federal government, and is charged with the responsibility of protecting the territory of the United States from terrorist attacks and responding to natural disasters.  One of the agencies commanded by Defendant is the TSA, which conducts business, maintains employees and operates as a safety and security-screening agency in this judicial district and throughout the country.  The Defendant is headquartered in Washington, D.C.

10.     Defendant is the head of the DHS and the sole Defendant in this case. See 42 U.S.C. § 2000e-16(a) and (c).  At all relevant times herein, DHS is and was an "executive agency" as provided in 5 U.S.C. § 105, and as incorporated in 42 U.S.C. § 2000e-16, is "an Executive Department, a Government corporation, or an independent establishment."

11.     The TSA, where Plaintiff worked, was transferred to the DHS pursuant to the Department of Homeland Security Act of 2002, section 424, effective March 1, 2003. Defendant therefore has the full responsibility for administration of all programs within the TSA, including the employment policies and practices of TSA in all regions and in a position to create and implement policy to eliminate and prevent any form of

discrimination and retaliation and to provide complete relief for Plaintiff.  Defendant is sued in his official capacity.

12.     The TSA, as a component of DHS, is responsible for the security of all modes of transportation including aviation, rail, highways and pipelines. The vast majority of TSA's resources are dedicated to aviation, and as such, TSA oversees the passenger safety and security measures at approximately 450 of the nation's commercial airports, including airports within the Central District of California.  The headquarters of the TSA in Southern California, including LAX and other airports, is located in Los Angeles, California.

13.     All operational instructions and policies and procedures and discipline originate at the National Headquarters of the DHS and TSA, are transmitted to LAX, and from there, Boyd Keith Jeffries, the Federal Security Director at TSA/LAX, has the responsibility, along with his immediate subordinates, to implement instructions, policies, procedures and discipline.  At all relevant times herein, TSA/LAX, under color of DHS, operated and/or managed and or supervised and did maintain TSA employees, agents, and/or representatives from TSA/LAX, including, but not limited to, Deputy Federal Security Director for Security Shannon Garcia-Hamilton ("Garcia-Hamilton"), Geoff Shearer ("Shearer"), Assistant Federal Security Director for Screening Jason Pantages ("Pantages"), Acting Assistant Federal Security Director for Screening Michael Duretto ("Duretto"), as well as the Plaintiff.

14.     Defendant is and was conducting business within the State of California, having an office located in the County of Los Angeles, and was also Plaintiff's employer.

15.     Defendant is a person engaged in an industry affecting commerce who has fifteen (15) or more employees for each working day in each of 20 or more calendar weeks in the current or preceding year in accordance with 42 U.S.C. § 2000e(b) and he is engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year in accordance with 29 U.S.C. § 630(b).

16.     The term "employer" under the Title VII liability scheme is defined to include any agent of the DHS and TSA as stated in 42 U.S.C. § 2000e(b); 29 U.S.C. §§ 630(b), 203(d).  Thus, all supervisory personnel and other agents of DHS and TSA described herein (e.g. Garcia-Hamilton, Shearer, Pantages, & Duretto) are themselves employers for purposes of liability.

17.     At all relevant times herein, all supervisory personnel and other agents of TSA described herein (e.g. Garcia-Hamilton, Shearer, Pantages, & Duretto) were the agents, servants, or employees of Defendant, and at all times were acting within the course and scope of said agency, service, or employment.

18.     At all relevant times herein, all supervisory personnel and other agents of TSA described herein (e.g. Garcia-Hamilton, Shearer, Pantages, & Duretto) acted with the knowledge, consent, and/or ratification of Defendant.

## ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

19.     At all relevant times herein, Plaintiff's race/national origin was Hispanic (Spanish), her sex/gender was female; and her year of birth was 1968.

20.     At all relevant times herein, Plaintiff was a Transportation Security Manager ("TSM"), SV-1801, H-band, and was employed by Defendant at LAX since October 2002.

21.     On or about April 18, 2011, Plaintiff was issued a Letter of Reprimand for her alleged failure to follow instructions.  Prior to April 18, 2011, Plaintiff had no formal discipline in her official personnel file.

22.     Plaintiff felt that the Letter of Reprimand issued to her on or about April 18, 2011 was result of unlawful employment discrimination, so Plaintiff sought EEO counseling and filed a formal complaint of discrimination. (Agency # HS-TSA-01353-2011, EEOC Case No. 480-2012-00428X).  Plaintiff's formal complaint of discrimination was investigated and it was settled on or about March 25, 2013.  As part of the settlement agreement, Defendant agreed, inter alia, to rescind the Letter of Reprimand by June 14, 2013.  Garcia-Hamilton, Shearer, Pantages, & Duretto had knowledge of Plaintiff's settlement on or about March 25, 2013.

23.     Immediately after settling her EEO case on or about March 25, 2013, Defendant began to retaliate against Plaintiff by initiating several unjustified formal disciplinary actions against her.

24.     For example, on or about April 30, 2013, Plaintiff was issued a Notice of Decision on Proposed Fourteen (14) Calendar Day Suspension by Shearer.  In the Notice of Decision on Proposed Fourteen (14) Calendar Day Suspension, Shearer effectively suspended Plaintiff for ten (10) calendar days for inappropriate conduct.

25.     On or about June 18, 2013, Plaintiff was issued a Notice of Decision on Proposed Removal.  In the Notice of Decision on Proposed Removal, Garcia-Hamilton

effectively removed Plaintiff from federal service for lack of candor and failure to properly designate employee representation.  However, on June 18, 2013, Garcia-Hamilton offered Plaintiff a Last Chance/Abeyance Agreement as an alternative to removal from federal service.  Plaintiff signed the Last Chance/Abeyance Agreement and Last Chance/Abeyance Agreement held the effective date of Plaintiff's removal in abeyance for one (1) year.

26.     On or about July 8, 2013, Garcia-Hamilton ordered that the SPOT Standard Operating Procedures ("SOP") be distributed to the checkpoints.[1]  This order by Garcia-Hamilton was a violation of the SPOT SOP itself.

27.     On or about July 8, 2013, Security Training Instructor ("STI") Ruth Bukowski ("Bukowski") distributed the SPOT SOPs to the checkpoints as directed by Garcia-Hamilton.  Terminal 2's Transportation Security Manager Brandi Richards ("Richards") received the SPOT SOPs for Terminal 1 & 2 from Bukowski.  Because Richards signed for the SPOT SOPs for Terminals 1 & 2, it was her responsibility to place the binders in the Sensitive Security Information ("SSI") cabinet and to add the binder into the system in Terminals 1 & 2.  Instead of securing the SPOT SOPs in Terminal 1, Richard sent Transportation Security Officer ("TSO") Frank Segbefia ("Segbefia") to Terminal 1 to deliver the SPOT SOP to Plaintiff in Terminal 1.

28.     On or about July 8, 2013, Segbefia handed Plaintiff a binder while she was sitting the podium in Terminal 1.  Segbefia only told Plaintiff that the binder was for the supervisor.  Plaintiff cursorily flipped through the binder but did not notice what the binder was or contained.  Plaintiff then placed on the binder to the left of her on the desk

---

[1] The SPOT SOP is sometimes referred to as "BDO SOP."

where the supervisors normally sit.  At no time did Plaintiff recognize the binder to be a SPOT SOP nor was she told that the binder was for her to secure.  Later and unbeknownst to Plaintiff, Supervisory Transportation Security Officer ("STSO") Detric Scott ("Scott") took possession of the SPOT SOP from the podium.  When Scott assumed possession of the SPOT SOP, it was Scott's responsibility to secure the SPOT SOP in the SSI cabinet and to add the binder into the system at Terminal 1.

29.     On July 10, 2013, while reviewing the SPOT SOP at approximately 0630, Deputy Assistant Federal Security Director for Screening Christine Pope ("Pope") discovered sections in the SPOT SOP that states that complete SPOT SOPs shall not be stored at the screening checkpoint locations.  At approximately 0700, Pope instructed SPOT Transportation Security Manager Charlie Chelette to retrieve all SPOT SOPs from the checkpoint screening locations.

30.     On July 10, 2013, at approximately 0708 hours, Chelette started his search in Terminal 1 but discovered that the SPOT SOP assigned to Terminal 1 was nowhere to be found.  Soon thereafter, Chelette reported to Pope that the SPOT SOP assigned to Terminal 1 was nowhere to be found.

31.     On July 10, 2013, at approximately 0840 hours, Chelette delivered the SPOT SOPs from Terminals 2 through Terminal 7, including Tom Bradley International Terminal to Greg Vahradyan in the Training Department.  At that time, Chelette was informed that Terminal 1 was issued a SPOT SOP on Monday July 8, 2013 (signed for by TSM Richards).

32.     On July 10, 2013, at approximately 1000 hours, Chelette returned to Terminal 1 and spoke to the on duty STSOs to see if they could assist him in locating the SPOT SOP.

33.     On July 10, 2013, at approximately 1030 hours, Chelette notified Pope that the SPOT SOP assigned to Terminal 1 was still missing.  Chelette also informed Pope that Richards said she gave the SPOT SOPs to Segbefia to deliver to Terminal 1.

34.     On July 10, 2013, at approximately 1045 hours, Pope went to the Terminal 1 Checkpoint to attempt to locate the SPOT SOP.  All possible locations in Terminal 1 were searched, along with the Behavioral Detection Officers ("BDOs) offices.  All BDO officers and managers who were on duty then night before (and assigned to Terminal 1) were contacted to see if they recall seeing or checking out the SPOT SOP from the Terminal 1 checkpoint screening location.

35.     On July 10, 2013, at approximately 1217 hours, Pope contacted Bondoc and reported that the SPOT SOP assigned to Terminal 1 was unaccounted for.

36.     On July 10, 2013, sometime after 1217 hours, Bondoc called Garcia-Hamilton and told her that the SPOT SOP for Terminal 1 was missing.  Bondoc also told Garcia-Hamilton that Segbefia delivered the binder on July 8, 2013 and on July 10, 2013, Bondoc was unable to locate it.

37.     On July 10, 2013, after being informed that the SPOT SOP was missing, Plaintiff spoke to several supervisors regarding the location of the SPOT SOP.  When Plaintiff spoke to Scott, he informed her that he recalled putting the SPOT SOP in the SSI cabinet midway during his shift on Monday July 8, 2013.  Scott informed Plaintiff that he noticed the SPOT SOP sitting on the podium and secured it in the SSI cabinet.

38.     At all relevant times herein, Garcia-Hamilton was a Caucasian/white woman <u>over</u> the age of forty (40) years of age.

39.     At all relevant times herein, Richards was a Caucasian/white woman <u>under</u> the age of forty (40) years of age.

40.     At all relevant times herein, Scott was an African-American male <u>under</u> the age of forty (40) years of age.

41.     At all relevant times herein, Bukowski was a Caucasian/white woman <u>over</u> the age of forty (40) years of age.

42.     At all relevant times herein, Segbefia was an African-American male <u>under</u> the age of forty (40) years of age.

43.     No corrective, disciplinary, or adverse action was taken against Garcia-Hamilton for ordering that complete SPOT SOPs be delivered to all screening checkpoint locations at LAX.

44.     No corrective, disciplinary, or adverse action was taken against Richards for her involvement and/or handling of the Terminal 1 SPOT SOP on July 8, 2013.

45.     No corrective, disciplinary, or adverse action was taken against Scott for his involvement and/or handling of the Terminal 1 SPOT SOP on July 8, 2013.

46.     No corrective, disciplinary, or adverse action was taken against Bukowski for her involvement and/or handling of the Terminal 1 SPOT SOP on July 8, 2013.

47.     No corrective, disciplinary, or adverse action was taken against Segbefia for his involvement and/or handling of the Terminal 1 SPOT SOP on July 8, 2013.

48.     Plaintiff was subject to at least four (4) adverse employment actions: (a) a ten (10) day suspension on or about April 30, 2013; (b) removal from federal

service on or about June 18, 2013, (c) the issuance of the Last Chance/Abeyance Agreement on or about June 18, 2013, and (d) the removal action being reinstated on or about July 11, 2013.

## **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

49.     As indicated in paragraphs 50 through 63 below, Plaintiff has met all procedural requirements for filing this Complaint.

50.     Plaintiff first requested EEO counseling in this matter on or about July 29, 2013, which was within 45 days of <u>discovering</u> the employment discrimination as alleged on or about June 18, 2013 and July 11, 2013.

51.     On or about August 28, 2013, Defendant informed Plaintiff of the conclusion of the EEO counseling process and provided Plaintiff a Notice of Right to File a Formal Complaint of Discrimination.

52.     Plaintiff received the Notice of Right to File a Formal Complaint of Discrimination on or about November 4, 2013.

53.     Plaintiff submitted a formal charge of Discrimination to Defendant on or about November 5, 2013, which was within fifteen (15) days of receipt of the Notice of Right to File a Formal Complaint of Discrimination on November 4, 2013.  Defendant acknowledged receipt of the formal complaint on or about November 8, 2013.  In her formal complaint, Plaintiff alleged that as a Transportation Security Manager she was discriminated against based on race (Hispanic), sex (female), age (YOB: 1968), and reprisal (unspecified prior EEO activity) when:

1.  On or about June 18, 2013, you were removed from federal service;

2.   On or about June 18, 2013, you were issued a Removal-Last Chance/Abeyance Agreement, and

3.  On or about July 11, 2013, TSA decided that you did not comply with the terms of the Removal-Last Chance/Abeyance Agreement; the removal action was reinstated, and you were terminated."

54.     On or about December 11, 2013, Defendant dismissed some of Plaintiff's claims in paragraph 48 above and accepted the following claim for investigation:

"You, a Transportation Security Manager, at the Los Angeles International Airport, California, allege you were discriminated against based on race (Hispanic), sex (female), age (YOB: 1968), and reprisal (unspecified prior EEO activity) when on or about July 11, 2013, TSA decided that you did not comply with the terms of the Removal-Last Chance/Abeyance Agreement; the removal action was reinstated, and you were terminated."

55.     Defendant investigated Plaintiff's claim between on or about January 2014 through March 2014.  At the conclusion of the investigation, Defendant provided Plaintiff with a copy of the Report of Investigation ("ROI") and notice of his right to request a hearing before an EEOC Administrative Judge ("AJ") or, alternatively, to request a Final Agency Decision.

56.     Plaintiff requested a hearing before an AJ and on or about February 7, 2015.

57.     On or about August 21, 2018, Plaintiff requested to withdraw her request for an administrative hearing and instead sought a final agency decision.

58.     On or about August 22, 2018, the AJ from the EEOC's St. Louis District Office dismissed the administrative complaint from the EEOC hearing process and remanded it to Defendant for a final agency decision.

59.     On or about October 26, 2018, pursuant to 29 C.F.R § 1614.110, Defendant took final action on Plaintiff's complaint by issuing a final agency decision.

Defendant served his final agency decision by email on October 26, 2018.  Plaintiff

received Defendant's final agency decision on or about October 26, 2018.

60.    On or about November 21, 2018, Plaintiff timely filed a Notice of Appeal of

Defendant's final agency decision with the Office of Federal Operations ("OFO").

61.    On or about April 26, 2019, the OFO affirmed Defendant's final agency

decision.  Plaintiff received the OFO decision on or about May 1, 2019.

62.    On or about May 31, 2019, Plaintiff requested reconsideration of the OFO

decision.

63.    On or about January 7, 2020, the OFO issued its *Decision on Request for*

*Reconsideration*.  Plaintiff received the OFO's *Decision on Request for Reconsideration*

on or about January 12, 2020, therefore, Plaintiff has brought this action within the time

limits established in 42 U.S.C. § 2000e-16(c).  Accordingly, Plaintiff has exhausted his

administrative remedies.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### (Unlawful Race Discrimination/Disparate Treatment)

64.    Paragraphs 1 through 63 above are hereby incorporated by reference as

though fully set forth in this claim.

65.    At all relevant times herein, Plaintiff's race was Hispanic (Spanish); a class

protected by law.  Defendant treated Plaintiff differently than similarly situated

individuals outside the Plaintiff's protected class because of her membership in the

aforementioned protected class.  In other words, Defendant did not propose or take

corrective, disciplinary, or adverse action was taken against other, non-Hispanic

(Spanish) employees who engaged in conduct similar to her own—such as the improper

storing of the SPOT SOPs at screening checkpoint locations and the failure to ensure the SPOT SOP was properly secured in a locked desk or file cabinet and protected from unauthorized access on or about July 8, 2013.

66.     Title VII of the Civil Rights of 1964, as amended, makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ." 42 U.S.C. § 2000e-2(a)(1).  Title VII of the Civil Rights of 1964, as amended, also adds that ". . . an unlawful employment practice is established when the complaining party demonstrates that race . . . was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m).

67.     Defendant through its officers, agents, and/or employees acting within the scope of their employment, discriminated against Plaintiff on the basis of her race (i.e. Hispanic (Spanish) in violation of 42 U.S.C.A. § 2000e-2(a)(1) by engaging in a course of conduct which included, but is not limited to, at least some of the acts set forth above.

68.     At all relevant times herein, Plaintiff was undeniably qualified for the TSM position because she was hired by Defendant on or about June 20, 2010.  Plaintiff satisfactorily performed the duties of a TSM without limitation or restriction from in or about October 2002 until on or about July 18, 2013, and she was fully capable of performing the essential duties of a TSM from in or about October 2002 until on or about July 18, 2013.  Additionally, since Plaintiff began her employment with Defendant in or about October 2002, she has continually met Defendant's legitimate performance expectations each fiscal year because she always received at least an "Achieved Standards" rating on all of his performance evaluations.

69.     Plaintiff was subject to at least four (4) adverse employment actions: (a) a ten (10) day suspension on or about April 30, 2013; (b) removal from federal service on or about June 18, 2013, (c) the issuance of the Last Chance/Abeyance Agreement on or about June 18, 2013, and (d) the removal action being reinstated on or about July 11, 2013.

70.     Similarly situated employees (e.g., Garcia-Hamilton, Richard, Scott, Bukowski, and Segbefia) to Plaintiff and not within Plaintiff's protected class were treated more favorably than Plaintiff by Defendant.  Specifically, as referenced herein, similarly situated non-Hispanic (Spanish) employees who failed to ensure the SPOT SOP was properly secured in a locked desk or file cabinet and protected from unauthorized access on or about July 8, 2013 (e.g., Garcia-Hamilton, Richard, Scott, Bukowski, and Segbefia), were not similarly disciplined and/or removed from federal service like Plaintiff.

71.     Garcia-Hamilton, Richard, Scott, Bukowski, and Segbefia are proper comparable employees in all material respects because they are all subject to the same TSA policies regardless of position, including but not limited to, TSA Management Directive No. 1100.73-5 (Employee Responsibilities and Conduct): Section 5 - Responsibilities: 5.A.(2) and 5.A.(7); and TSA Management Directive 2810.1 (SSI Program): Section 5 – Responsibilities: 5.A.(1), 5.A.(2), 5.A.(6); and accompanying Handbook Section 5.1 – General Protection of SSI; and 49 CFR Part §1520.9.

72.     There was no legitimate, non-discriminatory reason for the differing treatment between Plaintiff and the similarly situated employees referenced herein.  In fact, Defendant's sustainment of the charge of failure to ensure the SPOT SOP was

properly secured in a locked desk or file cabinet and protected from unauthorized

access and reasons in support thereof for Plaintiff's removal from federal service are

pretextual.

73.    Defendant's discrimination against Plaintiff on the basis of her race (i.e.,

Hispanic (Spanish) in violation of 42 U.S.C.A. § 2000e-2(a)(1) was a substantial and

motivating reason for unlawful treatment of her as alleged in this complaint including her

removal from federal service.

74.    The conduct of Defendant violated the provisions of Title VII of the Civil

Rights Act of 1964, as amended ("Title VII"), (42 U.S.C. § 2000e et seq.) which

constitutes fundamental public policy declaring it to be illegal to discriminate against an

employee based upon the employee's race.  Defendant's conduct was discriminatory in

its disparate treatment of Plaintiff.

75.    As a direct and proximate result of Defendants' violation of 42 U.S.C. §

2000e-2(a)(1), Plaintiff has suffered general and special damages, including lost wages,

lost benefits, lost seniority, lost future earnings, lost employment opportunities,

emotional distress, anxiety, humiliation, embarrassment, and loss of self-esteem in an

amount to be determined at trial.  Plaintiff has suffered and will continue to suffer

irreparable injury and monetary damages as a result of defendant's discriminatory

practices unless the Court grants relief.  Therefore, Plaintiff seeks all legal and equitable

remedies available at law.

76.    As a further direct and proximate result of Defendant's violation of 42

U.S.C.A. §2000e-2, Plaintiff has been compelled to retain the services of the Law

Offices of Edward J. Blum and will continue to incur legal fees and costs.  Plaintiff

requests that attorney's fees be awarded pursuant to 42 U.S.C.A. § 2000e-5(k) and 29

U.S.C. § 2000e-16(d) where in any action or proceeding under this subchapter the

court, in its discretion, may allow the prevailing party, a reasonable attorney's fee

(including expert fees) as part of the costs, and the United States shall be liable for

costs the same as a private person.

## SECOND CAUSE OF ACTION
### (Unlawful Sex Discrimination/Disparate Treatment)

77.    Paragraphs 1 through 63 above are hereby incorporated by reference as

though fully set forth in this claim.

78.    At all relevant times herein, Plaintiff's sex/gender was female; a class

protected by law.  Defendant treated Plaintiff differently than similarly situated

individuals outside Plaintiff's protected class because of her membership in the

aforementioned protected class.  In other words, Defendant did not propose or take

corrective, disciplinary, or adverse action was taken against other, non-Hispanic

(Spanish) employees who engaged in conduct similar to her own—such as the improper

storing of the SPOT SOPs at screening checkpoint locations and the failure to ensure

the SPOT SOP was properly secured in a locked desk or file cabinet and protected from

unauthorized access on or about July 8, 2013.

79.    Title VII of the Civil Rights of 1964, as amended, makes it unlawful for an

employer to "discriminate against any individual with respect to his compensation,

terms, conditions, or privileges of employment, because of such individual's sex . . . ."

42 U.S.C. § 2000e-2(a)(1).  Title VII of the Civil Rights of 1964, as amended, also adds

that ". . . an unlawful employment practice is established when the complaining party

demonstrates that sex . . . was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m).

80.     Defendant through its officers, agents, and/or employees acting within the scope of their employment, discriminated against Plaintiff on the basis of her sex (female) in violation of 42 U.S.C.A. § 2000e-2(a)(1) by engaging in a course of conduct which included, but is not limited to, at least some of the acts set forth above.

81.     At all relevant times herein, Plaintiff was undeniably qualified for the TSM position because she was hired by Defendant on or about June 20, 2010.  Plaintiff satisfactorily performed the duties of a TSM without limitation or restriction from in or about October 2002 until on or about July 18, 2013, and she was fully capable of performing the essential duties of a TSM from in or about October 2002 until on or about July 18, 2013.  Additionally, since Plaintiff began her employment with Defendant in or about October 2002, she has continually met Defendant's legitimate performance expectations each fiscal year because she always received at least an "Achieved Standards" rating on all of his performance evaluations.

82.     Plaintiff was subject to at least four (4) adverse employment actions: (a) a ten (10) day suspension on or about April 30, 2013; (b) removal from federal service on or about June 18, 2013; (c) the issuance of the Last Chance/Abeyance Agreement on or about June 18, 2013; and (d) the removal action being reinstated on or about July 11, 2013.

83.     Similarly situated employees (e.g., Scott and Segbefia) to Plaintiff and not within Plaintiff's protected class were treated more favorably than Plaintiff by Defendant.  Specifically, as referenced herein, similarly situated male employees who

failed to ensure the SPOT SOP was properly secured in a locked desk or file cabinet and protected from unauthorized access on or about July 8, 2013 (e.g., Scott and Segbefia), were not similarly disciplined and/or removed from federal service like Plaintiff.

84.     Scott and Segbefia are proper comparable employees in all material respects because they are all subject to the same TSA policies regardless of position, including but not limited to, TSA Management Directive No. 1100.73-5 (Employee Responsibilities and Conduct): Section 5 -Responsibilities: 5.A.(2) and 5.A.(7); and TSA Management Directive 2810.1 (SSI Program): Section 5 – Responsibilities: 5.A.(1), 5.A.(2), 5.A.(6); and accompanying Handbook Section 5.1 – General Protection of SSI; and 49 CFR Part §1520.9).

85.     There was no legitimate, non-discriminatory reason for the differing treatment between Plaintiff and the similarly situated employees referenced herein.  In fact, the charges of failed to ensure the SPOT SOP was properly secured in a locked desk or file cabinet and protected from unauthorized access on or about July 8, 2013 and reasons in support thereof for Plaintiff's removal from federal service are pretextual.

86.     Defendant's discrimination against Plaintiff on the basis of her sex (e.g. female) in violation of 42 U.S.C.A. § 2000e-2(a)(1) was a substantial and motivating reason for unlawful treatment of her as alleged in this complaint including her removal from federal service.

87.     The conduct of Defendant violated the provisions of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), (42 U.S.C. § 2000e et seq.) which constitutes fundamental public policy declaring it to be illegal to discriminate against an

employee based upon the employee's sex.  Defendant's conduct was discriminatory in its disparate treatment of Plaintiff.

88.     As a direct and proximate result of Defendants' violation of 42 U.S.C. § 2000e-2(a)(1), Plaintiff has suffered general and special damages, including lost wages, lost benefits, lost seniority, lost future earnings, lost employment opportunities, emotional distress, anxiety, humiliation, embarrassment, and loss of self-esteem in an amount to be determined at trial.  Plaintiff has suffered and will continue to suffer irreparable injury and monetary damages as a result of defendant's discriminatory practices unless the Court grants relief.  Therefore, Plaintiff seeks all legal and equitable remedies available at law.

89.     As a further direct and proximate result of Defendant's violation of 42 U.S.C.A. §2000e-2, Plaintiff has been compelled to retain the services of the Law Offices of Edward J. Blum and will continue to incur legal fees and costs.  Plaintiff requests that attorney's fees be awarded pursuant to 42 U.S.C.A. § 2000e-5(k) and 29 U.S.C. § 2000e-16(d) where in any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, a reasonable attorney's fee (including expert fees) as part of the costs, and the United States shall be liable for costs the same as a private person.

### THIRD CAUSE OF ACTION
### (Unlawful Age Discrimination/Disparate Treatment)

90.     Paragraphs 1 through 63 above are hereby incorporated by reference as though fully set forth in this claim.

91.     The ADEA prohibits discrimination against employees over the age of 40 based on age.  Acts forbidden by the ADEA include discrimination in hiring, discharge, promotions and all other terms and conditions of employment.

92.     The ADEA states at Section 623(a)(1) that "[i]t shall be unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.  The ADEA states at Section 633a(a) that "[a]ll personnel actions affecting employees or applicants for employment who are at least 40 years of age (except personnel actions with regard to aliens employed outside the limits of the United States) in military departments as defined in section 102 of title 5, in executive agencies as defined in section 105 of title 5 (including employees and applicants for employment who are paid from nonappropriated funds), in the United States Postal Service and the Postal Regulatory Commission, in those units in the government of the District of Columbia having positions in the competitive service, and in those units of the judicial branch of the Federal Government having positions in the competitive service, in the Smithsonian Institution, and in the Government Publishing Office, the Government Accountability Office, and the Library of Congress shall be made free from any discrimination based on age."

93.     On or about July 11, 2013, Defendant violated 29 U.S.C. § 623(a)(1), in that a substantial motivating factor in the decision to terminate Plaintiff employment was Plaintiff's age.

94.     On or about July 11, 2013, Plaintiff was 40 years of age or older at the time he was discharged/removed from federal service.

95.     On or about July 11, 2013, Defendant discharged/removed Plaintiff from federal service because of her age, that is, the Defendant would not have discharged/removed Plaintiff from federal service but for her age.

96.     As a direct and proximate result of said discrimination, Plaintiff sustained economic damages for past and future loss of earnings and benefits, according to proof.

97.     As a further direct and proximate result of said discrimination, Plaintiff sustained general damages for severe mental and emotional distress in sums prayed.

98.     Plaintiff is further entitled to an award of attorney's fees pursuant to 29 U.S.C. § 626(b).

99.     Plaintiff further seeks an order for reinstatement pursuant to 29 U.S.C. § 626(b).

## FOURTH CAUSE OF ACTION
### (Retaliation Discrimination in Violation of Title VII)

100.    Paragraphs 1 through 63 above are hereby incorporated by reference as though fully set forth in this claim.

101.     The acts, policies and practices of Defendant, as alleged herein above, violate Title VII's retaliation discrimination provisions.

102.    Title VII prohibit employers from discriminating against any of their employees because such employees have opposed any practice made an unlawful employment practice by Title VII, or because an employee has made a charge or

participated in any manner in an investigation, proceeding or hearing under Title VII. 42 U.S.C. § 2000e-3(a).

103.    Defendant willfully and intentionally discriminated against Plaintiff, as alleged hereinabove, on the basis of reprisals for her complaints about, and opposition to, Defendant's discrimination against Plaintiff on the basis of her race/national origin, color, sex, and reprisal in EEOC Case no. 480-2012-00428X, Agency No. HS-TSA-01353-2011, that settled on or about March 25, 2013.

104.    Pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e-3(a), it is an unlawful employment practice for an employer to retaliate against an employee who opposes unlawful discriminatory conduct; or asserts civil rights protected by this statute.

105.    Plaintiff was at all times herein an employee covered by 42 U.S.C. 2000e, et seq., prohibiting discrimination in employment on the basis of race, sex, and reprisal. Defendant was at all times herein an employer subject to 42 U.S.C. 2000e, et seq.

106.    On or about March 25, 2013, Plaintiff engaged in protected activity she settled her EEO case (EEOC Case no. 480-2012-00428X, Agency No. HS-TSA-01353-2011).  Garcia-Hamilton, Shearer, Pantages, & Duretto all had knowledge of Plaintiff's participation in the EEO case (EEOC Case no. 480-2012-00428X, Agency No. HS-TSA-01353-2011) and her settlement of it.

107.    Plaintiff was subject to at least four (4) adverse employment actions: (a) a ten (10) day suspension on or about April 30, 2013; (b) removal from federal service on or about June 18, 2013; (c) the issuance of the Last Chance/Abeyance

Agreement on or about June 18, 2013; and (d) the removal action being reinstated on or about July 11, 2013.

108.    Defendant retaliatory conduct was done intentionally to discourage Plaintiff and others like her from engaging in EEO activity and/or would dissuade reasonable employees from engaging in protected activity.

109.    As a proximate result of Defendant's retaliation against Plaintiff, Plaintiff has suffered and continues to suffer substantial losses and has suffered and continues to suffer embarrassment, emotional distress, humiliation and mental anguish, all to her damage in an amount according to proof.

110.    The effect of the retaliation complained of herein has been to deprive Plaintiff of equal employment opportunities.

111.    The unlawful employment practices were intentional, done with malice or with reckless indifference to Plaintiff's federally protected rights.

112.    By reason of Defendant's discrimination and retaliation, Plaintiff is entitled to all legal and equitable remedies available under 42 U.S.C. §2000e et. seq.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendant as follows:

1.      This court declare the actions complained of herein to be in violation of Title VII of the Civil Rights Act and the ADEA, as amended;

2.      An order reinstating Plaintiff to his former position as a TSM, including but not limited to, restoration of seniority, annual and sick leave, and other benefits that she would have received but for her unlawful removal from federal service;

3.     For special or economic damages comprised of past loss earnings and future loss of earnings, in an amount to be proven at the time of trial;

4.     For general or non-economic damages in the form of emotional distress, pain and suffering, humiliation, worry, and stress in an amount to be proven at the time of trial but which in any case shall not exceed $300,000;

5.     Defendant be ordered to take appropriate affirmative acts to ensure that the actions complained of herein are not engaged in again by Defendant or any of his agents;

6.     Defendant, including the officers, director, agents, employees and successors, be permanently enjoined from discriminating or retaliating against any person;

7.     Actual damages be awarded to Plaintiff and against Defendant;

8.     Compensatory damages be awarded to Plaintiff and against Defendant;

9.     Plaintiff be awarded her attorneys' fees pursuant to 42 U.S.C. §1988, and the Age Discrimination in Employment Act; 29 U.S.C.A. §§ 2000e-16(d); 2000e-5(k).

10.    Plaintiff be awarded her costs; and

11.    Plaintiff be awarded all other relief that this Court deems just and proper under the circumstances.

Dated:  April 11, 2020                    _____/s/_____
                                                    EDWARD J. BLUM

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby

demands a jury trial.


Dated:  April 11, 2020                         _____/s/_____
                                                                 EDWARD J. BLUM